UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IRON MOUNTAIN INFORMATION MANAGEMENT, INC., <br><br> Interpleader-Plaintiff, <br><br> v. <br><br> L&L TEMPORARIES, INC., FLEXIBLE FUNDING, LLC, and THE UNITED STATES OF AMERICA THROUGH THE INTERNAL REVENUE SERVICE, <br><br> Interpleader-Defendants. | CIVIL ACTION <br> NO: 1:05-10979 DPW |

**FIRST AMENDED COMPLAINT FOR INTERPLEADER,
DECLARATORY JUDGMENT AND INJUNCTIVE AND COMPENSATORY RELIEF**

Interpleader-plaintiff Iron Mountain Information Management, Inc. ("Iron Mountain"), by its attorneys, Sullivan & Worcester LLP, as and for its complaint for interpleader and declaratory, injunctive and compensatory relief against interpleader-defendants L&L Temporaries, Inc. ("L&L"), Flexible Funding, LLC ("Flexible Funding"), and the United States of America through the Internal Revenue Service (the "IRS" and together with L&L and Flexible Funding, the "Claimants" or "Defendants"), alleges as follows:

**Nature of the Action**

1. Iron Mountain, the world's leader for outsourced records and information management services, entered into contracts with L&L in 2004 pursuant to which L&L was to provide and did provide temporary employment services, *i.e.*, temporary labor, for Iron Mountain in the Greater Boston area. L&L allegedly signed and executed an accounts financing agreement with Flexible Funding whereby L&L factored its accounts receivable including,

{B0413730; 1}

-2-

allegedly, any amounts due to L&L from Iron Mountain. L&L and Flexible Funding are now making competing, adversarial claims on certain monies due and owing, but that Iron Mountain is holding (the "Escrowed Funds"), for temporary labor provided by L&L. Iron Mountain has received a Notice of Levy from the IRS requesting that Iron Mountain turn over a certain portion of the Escrowed Funds to the United States Treasury and thus, the IRS is now making a competing, adversarial claim to a certain portion of the Escrowed Funds. Iron Mountain seeks to have the Claimants interplead to determine their disputed, adversarial interests in the Escrowed Funds. Iron Mountain also seeks a binding declaratory judgment and order from the Court declaring whether Iron Mountain is liable to L&L or Flexible Funding for any allegedly misdirected payments or allegedly unpaid invoices. Finally, Iron Mountain seeks compensatory relief for damages that it has incurred.

## Parties

2. Interpleader-plaintiff Iron Mountain is a Delaware corporation with a principal place of business located at 1000 Campus Drive, Collegeville, Pennsylvania. Iron Mountain is a wholly-owned subsidiary of Iron Mountain Incorporated (NYSE: IRM).

3. Interpleader-defendant L&L is, upon information and belief, a Massachusetts corporation with a principal place of business located at 101 Tremont Street, Boston, Massachusetts.

4. Interpleader-defendant Flexible Funding is, upon information and belief, a California limited liability company with a principal place of business located at 1 Embarcadero Center, San Francisco, California.

5. The Interpleader-defendant United States of America, through the IRS, maintains a local office at 1 Montvale Avenue, Stoneham, Massachusetts.

**Jurisdiction and Venue**

6. This Court has original jurisdiction over the subject matter of this action pursuant to the provisions of 28 U.S.C. § 1335 in that this is an action for interpleader or in the nature of interpleader and there is diversity of citizenship between the Claimants and the amount in controversy is more than $500. This Court also has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a)(1) in that the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interests and costs, and is between citizens of different states.

7. Venue is proper in this district pursuant to the provisions of 28 U.S.C. § 1397 in that one or both of the Claimants reside in and are subject to personal jurisdiction in Massachusetts. Venue is also proper in this district pursuant to 28 U.S.C. § 1391 in that a substantial part of the events or omissions giving rise to the dispute occurred in this judicial district.

**Background**

8. By written agreements dated April 20, 2004 (the "Contracts"), Iron Mountain and L&L agreed, among other things, that L&L would provide temporary labor to Iron Mountain. True copies of the Contracts are annexed hereto collectively as Exhibit A. The Contracts further provide that L&L is responsible for payment of all employment, withholding, and other tax obligations resulting from the services provided by L&L under the Contracts.

9. Pursuant to the Contracts, L&L agreed to maintain complete and accurate accounting records in a form in accordance with standard accounting practices and retain such records (and make them available to Iron Mountain for review) for one (1) year from the final date of payment. Iron Mountain and L&L also agreed that L&L would bill monthly for the services provided and L&L agreed to provide a signed time slip with its invoices.

10. Pursuant to the Contracts, L&L and Iron Mountain agreed that Iron Mountain's payments would be directed to:

> L&L Temporaries, Inc.
> P.O. Box 1300
> Suisun City, CA 94585-4300
> syerdon@lnlassociates.com
> (617) 423-4955

11. One of the Contracts provides that it may not be assigned without the written permission of the non-assigning party.

12. The Contracts, by their terms, are governed by Massachusetts law.

13. Pursuant to the Contracts, any notices to Iron Mountain were required to be sent to either:

> Iron Mountain Information Management, Inc.
> 745 Atlantic Avenue
> Boston, MA 02111
> Attn: Garry Watzke, Vice President & General Counsel
> Telefax: 617-368-9117

or

> Iron Mountain Information Management, Inc.
> 96 High Street
> North Billerica, MA 01862
> ATTN: General Manager

14. On or about February 18, 2004, which was more than two (2) months before Iron Mountain and L&L entered into the Contracts, Flexible Funding, through its Boston counsel, allegedly sent a letter to one of Iron Mountain's facilities at 32 George Street, Boston, Massachusetts, advising Iron Mountain that Flexible Funding had financed L&L and that all loans to L&L are secured by a first priority lien in the accounts receivable of L&L. In its February 18, 2004 letter, Flexible Funding also claimed it discovered in a review of its records that certain payments allegedly due from Iron Mountain had been misdirected. Flexible

Funding's letter further directed Iron Mountain to make payments to P.O. Box 1300, Suisun City, CA 94585-4300. At the time of the February 18, 2004, letter from Flexible Funding to Iron Mountain, Iron Mountain did not have any business relationship with and did not owe any money to L&L; accordingly, such letter was of no import or interest to Iron Mountain.

15. One year later, on or about February 18, 2005, Flexible Funding, again through its Boston counsel, sent a letter to Iron Mountain's General Counsel. In its February 18, 2005 letter, Flexible Funding stated that certain payments had not been received by Flexible Funding and advised Iron Mountain that Flexible Funding is the assignee of L&L's present and future accounts (though one year earlier it stated that Flexible Funding was merely a lien holder) and directed that any payments on L&L invoices should be sent to Flexible Funding in California.

16. On March 9, 2005, Shelly Baldwin, Collector II at Euler Hermes ACI, located in Owings Mills, Maryland and which claims to be a credit insurer representing Flexible Funding, wrote to Iron Mountain regarding 27 invoices that Flexible Funding asserted were owed and unpaid by Iron Mountain.

17. On March 15, 2005, in an effort to correct Euler Hermes' misunderstanding, Iron Mountain responded to Ms. Baldwin and explained that of the 27 invoices identified in Ms. Baldwin's letter, Iron Mountain's records reflect only 11 such invoices issued by L&L. Iron Mountain further explained that it had paid all 11 invoices in full (and provided a chart outlining when and in what manner each invoice had been paid).

18. On March 17, 2005, Iron Mountain wrote to Flexible Funding's Boston counsel explaining that, based on Iron Mountain's own internal investigation, it did not believe that Flexible Funding's statement that certain payments due from Iron Mountain to L&L had been misdirected was accurate. In that March 17, 2005 letter, Iron Mountain requested that Flexible

Funding provide the information and documentary support of its assertion of misdirected payments. Pursuant to Section 9-405(c) of the Massachusetts Uniform Commercial Code, Mass. Gen. Laws c. 106, § 9-405(c), Iron Mountain also requested proof of Flexible Funding's entitlement to payment of any L&L invoice to Iron Mountain. Flexible Funding did not provide any such proof to Iron Mountain, as required by the statute.

19. On March 17 and 18, 2005, Ms. Baldwin of Euler Hermes ACI responded to Iron Mountain's letter of March 15, 2005 referred to in paragraph 16, *supra*. Ms. Baldwin asserted, incorrectly, that there were many L&L invoices that had either been unpaid or "short-paid" or that payments had been misdirected. In connection with her letters of March 17 and 18, 2005, Ms. Baldwin enclosed copies of invoices that had allegedly been sent to Iron Mountain for services that L&L had allegedly provided to Flexible Funding. Ms. Baldwin also enclosed what she alleged were computer screen prints from Iron Mountain's accounts payable system showing amounts which Iron Mountain allegedly owed to L&L (and thus allegedly owed to Flexible Funding).

20. On March 30, 2005, Iron Mountain sent a letter to Ms. Baldwin of Euler Hermes ACI responding comprehensively to all of the issues that Ms. Baldwin had raised to date. As for the "short-paid" invoices, Iron Mountain explained, among other things, that in each and every instance where Flexible Funding's records indicate that Iron Mountain "short paid" an invoice, the amount that L&L allegedly reported to Flexible Funding as being invoiced to Iron Mountain differed, in many cases very significantly, from the amount of the actual invoice which L&L sent to Iron Mountain. Iron Mountain further explained that where Flexible Funding's records allegedly indicate that Iron Mountain failed to pay L&L invoices, Iron Mountain did not receive any of those invoices from L&L and, in any event, L&L did not perform any of the services

purportedly reflected on those unpaid invoices such that Iron Mountain would not have paid them if they had been received. Finally, with respect to the alleged computer screen prints that Ms. Baldwin included in her previous letter, Iron Mountain pointed out that they "appear to be hand-modified screen prints" (*i.e.*, forged) and explained the factual basis for this conclusion.

21. Upon information and belief, L&L submitted inaccurate documentation, including documents purporting to be invoices from L&L to Iron Mountain that were not actually sent to Iron Mountain, to Flexible Funding with inflated invoices in an effort to borrow more money than it was entitled to borrow from the accounts financing agreement between L&L and Flexible Funding.

22. By electronic mail dated December 1, 2004, from L&L's President, Susan Yerdon, L&L informed Iron Mountain that its accounts financing agreement with Flexible Funding had been terminated and that all payments should be made to L&L's office on Tremont Street in Boston. Upon being so advised, and still having not received any proof of Flexible Funding's entitlement of direct payments from Iron Mountain on L&L invoices, Iron Mountain escrowed any amounts owed (*i.e.*, the Escrowed Funds) and attempted to determine to whom it should make any payments.

23. As of January 12, 2005, L&L's invoices to Iron Mountain stated that payments were to be remitted to L&L's Tremont Street office in Boston.

24. On June 3, 2005, Iron Mountain received a Notice of Levy, identifying number: 02-0581393, from the IRS. A true copy of the Notice of Levy is attached hereto as Exhibit B. The Notice of Levy states that it "IS NOT A BILL FOR TAXES YOU [*i.e.*, IRON MOUNTAIN] OWE, THIS IS A NOTICE OF LEVY WE ARE USING TO COLLECT

MONEY OWED BY THE TAXPAYER NAMED ABOVE." The Notice of Levy identifies L&L as the Taxpayer.

25. The Notice of Levy states that the total amount due by L&L amounts to $162,583.65. The Notice of Levy further states that "there is a lien for the amount that is owed."

26. The Notice of Levy is dated May 26, 2005 and requests that any replies be directed to:

> Internal Revenue Service
> ROBERT F. KAY
> 1 MONTVALE AVE.
> STONEHAM, MA  02180

27. The Claimants have claimed a conflicting, adversarial interest in the Escrowed Funds, which currently total $262,910.84. Iron Mountain has no basis for forming an independent opinion as to which of the competing claims is meritorious.

28. Flexible Funding recently filed a complaint against Iron Mountain in a California state court in San Francisco (the "California Action"). However, Flexible Funding did not name L&L as a party in the California Action. The presence of L&L as a party is necessary for a complete adjudication of the rights and obligations of the parties in respect to the subject matters of this action.

Count I:  Interpleader
(As to L&L, Flexible Funding and the IRS)

29. Iron Mountain incorporates by reference herein the allegations in paragraphs 1 through and including 28 as if set forth in full herein.

30. Due to the Claimants' competing claims, Iron Mountain is exposed to and unfairly risks the possibility of multiple or conflicting liability.

31. The burden of unnecessary litigation and the risk of loss by Iron Mountain resulting from exposure to the possibility of multiple or conflicting liability will be best avoided by an interpleader action.

32. Iron Mountain accordingly requests that the Court authorize this interpleader action to proceed and permit Iron Mountain either to continue to hold the Escrowed Funds until such time as the Claimants' competing claims have been resolved or to deposit the same with the Clerk of this Court.

<u>Count II:  Declaratory Judgment and Injunctive Relief</u>
<u>(As to L&L, Flexible Funding and the IRS</u>)

33. Iron Mountain incorporates by reference herein the allegations in paragraphs 1 through and including 32 as if set forth in full herein.

34. Flexible Funding claims that Iron Mountain has misdirected payments to L&L when those payments should be delivered to Flexible Funding.

35. Flexible Funding claims that Iron Mountain has failed to pay or has "short-paid" invoices due and owing from L&L.

36. Contrary to these claims, Iron Mountain has not misdirected payments and has paid all invoices that have been properly presented to Iron Mountain.

37. Iron Mountain and the Claimants have adverse legal interests and an actual controversy exists and is continuing between Iron Mountain on the one hand, and the Claimants on the other.

38. The dispute between Iron Mountain and Claimants is an actual, real and substantial controversy that is justiciable by this Court pursuant to the Declaratory Judgments Act, 28 U.S.C. § 2201.

39.     By reason of the foregoing, Iron Mountain is entitled to a conclusive decree declaring its rights and legal obligations as they relate to the Claimants' claims and to a preliminary and permanent injunction enjoining and restraining the Claimants and others from instituting or proceeding with any action or suit against Iron Mountain in any other jurisdiction, including but not limited to the California Action, with respect to or in any way relating to or arising out of the agreements, transactions and occurrences that are the subject matters of this complaint.

### Count III:  Breach of Contract
(As to L&L only)

40.     Iron Mountain incorporates by reference herein the allegations in paragraphs 1 through and including 40 as if set forth herein.

41.     Iron Mountain and L&L, for good and valuable consideration, entered into the Contracts.  The Contracts reflect valid and binding legal obligations of Iron Mountain and L&L, enforceable in accordance with their terms.

42.     Upon information and belief, L&L breached the Contracts by, according to Flexible Funding, assigning the Contracts to Flexible Funding.  Upon further information and belief, L&L breached the Contracts by not paying required taxes to the IRS.

43.     Iron Mountain has fully performed its duties and obligations under the Contracts.

44.     As a direct and proximate result of L&L's breach, Iron Mountain has suffered or is at a risk of suffering damages.

### Count IV: Misrepresentation
(As to L&L only)

45.     Iron Mountain incorporates by reference herein the allegations in paragraphs 1 through and including 45 as if set forth herein.

46. By electronic mail dated December 1, 2004, from L&L's President, Susan Yerdon, L&L represented to Iron Mountain that the accounts financing agreement between L&L and Flexible Funding had been terminated and that Iron Mountain should make all payments to L&L directly.

47. Iron Mountain relied upon L&L's representations regarding the termination of the accounts financing agreement between L&L and Flexible Funding.

48. Upon information and belief, L&L's representations regarding the termination of the accounts financing agreement between L&L and Flexible Funding were false.

49. As a result of L&L's misrepresentations and Iron Mountain's reliance thereon, Iron Mountain has suffered or is at risk of suffering damages in an amount to be ascertained at trial.

<u>Count V:  Mass. Gen. Laws ch. 93A</u>
(<u>As to L&L only</u>)

50. Iron Mountain incorporates by reference herein the allegations in paragraphs 1 through and including 50 as if set forth herein.

51. L&L's conduct, as set forth above, constitutes unfair and deceptive acts and practices in the conduct of trade or commerce in violation of Mass. Gen. Laws c. 93A, § 2, actionable under § 11.

52. Upon information and belief, among other unfair and deceptive acts and practices, L&L provided false and fraudulent invoices to Flexible Funding and forged Iron Mountain print screens in an effort to show to its factoring agent that Iron Mountain owed more to L&L than was actually due.

53. L&L's unfair and deceptive acts occurred primarily and substantially in Massachusetts.

54. As a direct and proximate result of such unfair and deceptive acts and practices, Iron Mountain is exposed to a loss of its money or property in an amount to be determined at trial.

55. L&L's conduct has been a knowing and willful violation of Mass. Gen. Laws c. 93A, §§ 2 and 11, and, as a result, Iron Mountain is entitled to treble damages and reasonable attorneys fees.

WHEREFORE, Iron Mountain respectfully requests that this Court:

A. Permit Iron Mountain either (a) to continue to hold the Escrowed Funds until such time as L&L's and Flexible Funding's competing claims to the Escrowed Funds have been resolved, or (b) to deposit the Escrowed Funds into this Court by delivering the same to the Clerk of the Court;

B. Discharge Iron Mountain from any other or further obligations with respect to the Escrowed Funds and require L&L, Flexible Funding and the IRS to litigate in this Court their competing claims with respect to the Escrowed Funds;

C. Declare that Iron Mountain has not misdirected any payments that may have been owed to L&L or Flexible Funding and has paid all monies owed on all invoices that have been properly presented to Iron Mountain;

D. Enjoin and restrain L&L, Flexible Funding and the IRS, their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of such order by personal service or otherwise, from instituting or proceeding with any action or suit against Iron Mountain in any other jurisdiction with respect to or in any way relating to or arising out of the Escrowed Funds or the Contracts;

E.   Award Iron Mountain compensatory damages in an amount to be determined at trial;

F.   Award Iron Mountain at least double and up to three times actual damages, interest, costs, and attorneys' fees pursuant to Mass. Gen. Laws c. 93A;

G.   Award Iron Mountain its costs and expenses of action, including reasonable attorneys' fees and disbursements; and

H.   Award Iron Mountain such further relief as the Court deems just.

**IRON MOUNTAIN INFORMATION MANAGEMENT, INC.**

By its attorneys,

June 9, 2005

/s/ Samual A. Miller
Larry L. Varn (BBO #508130)
*lvarn@sandw.com*
Samual A. Miller (BBO #648568)
*smiller@sandw.com*
SULLIVAN & WORCESTER LLP
One Post Office Square
Boston, Massachusetts  02109
(617) 338-2800

{B0413730; 1}