UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                      )
IRON MOUNTAIN INFORMATION             )
MANAGEMENT, INC.,                     )
                                      )
           Plaintiff,                 )
                                      )   CIVIL ACTION NO. 05-10979-DPW
      v.                              )
                                      )
L&L TEMPORARIES, INC., ET AL.,        )
                                      )
           Defendants.                )
_____)
                                      )
FLEXIBLE FUNDING, LLC,                )
                                      )
           Plaintiff,                 )
                                      )
      v.                              )   CIVIL ACTION No. 05-12071-DPW
                                      )
IRON MOUNTAIN INFORMATION             )
MANAGEMENT, INC.,                     )
                                      )
           Defendant and Third-Party  )
           Plaintiff,                 )
                                      )
      v.                              )
                                      )
L&L TEMPORARIES, INC. and             )
SUSAN YERDON,                         )
                                      )
           Third-Party Defendants.    )
_____)

**THIRD-PARTY COMPLAINT AGAINST
<u>SUSAN YERDON AND L&L TEMPORARIES, INC.</u>**

Pursuant to Fed. R. Civ. P. 14(a), defendant and third-party plaintiff Iron Mountain Information Management, Inc. ("<u>Iron</u> <u>Mountain</u>"), by its attorneys, Sullivan & Worcester LLP, as and for its third-party complaint against Susan Yerdon ("<u>Yerdon</u>") and L&L Temporaries, Inc. ("<u>L&L</u>" and, together with Yerdon, the "<u>Third-Party</u> <u>Defendants</u>"), alleges as follows:

**Parties**

**Nature of the Action**

1. Iron Mountain is a Delaware corporation with a principal place of business located in Boston, Massachusetts. Iron Mountain is a wholly-owned subsidiary of Iron Mountain Incorporated (NYSE: IRM), also a Delaware corporation with a principal place of business located in Boston, Massachusetts.

2. Yerdon is an individual who, upon information and belief, is the President, Secretary, Treasurer and sole director of L&L, and resides at 1 Riverview Blvd., 4-203, Methuen, Massachusetts 01844.

3. L&L is a Massachusetts corporation which, upon information and belief, maintains its principal place of business at 101 Tremont Street, Boston, Massachusetts.

**Background**

4. Iron Mountain, the world's leader for outsourced records and information management services, entered into contracts with L&L in 2004 pursuant to which L&L was to provide and did provide temporary employment services, *i.e.*, temporary labor, for Iron Mountain in the Greater Boston area. L&L allegedly signed and executed an accounts financing agreement with Flexible Funding LLC ("Flexible Funding"), an interpleader defendant in Civil Action No. 05-10979-DPW and the plaintiff in Civil Action No. 05-12071-DPW whereby L&L factored its accounts receivable including, allegedly, any amounts due to L&L from Iron Mountain. Flexible Funding has alleged that, by making payments directly to L&L per L&L's written instructions, Iron Mountain has misdirected certain payments that should have been made directly to Flexible Funding. While Iron Mountain disputes any allegations of wrongdoing or any liability to Flexible Funding, if it is adjudged to have misdirected payments or is otherwise

liable to Flexible Funding, Iron Mountain is entitled to recovery against L&L and its principal, Yerdon.

5. By written agreements dated April 20, 2004 (the "Contracts"), Iron Mountain and L&L agreed, among other things, that L&L would provide temporary labor to Iron Mountain. The Contracts further provide that L&L is responsible for payment of all employment, withholding and other tax obligations resulting from the services provided by L&L to Iron Mountain under the Contracts.

6. Pursuant to the Contracts, L&L and Iron Mountain initially agreed that Iron Mountain's payments would be directed to:

> L&L Temporaries, Inc.
> P.O. Box 1300
> Suisun City, CA  94585-4300
> syerdon@lnlassociates.com
> (617) 423-4955

7. On or about February 18, 2004, which was more than two (2) months before Iron Mountain and L&L entered into the Contracts, Flexible Funding, through its Boston counsel, sent a letter to an Iron Mountain records center located at 32 George Street, Boston, Massachusetts, advising Iron Mountain that Flexible Funding had financed L&L and that all loans to L&L are secured by a first priority lien in the accounts receivable of L&L.  In its February 18, 2004 letter, Flexible Funding also claimed it discovered in a review of its records that certain payments allegedly due from Iron Mountain had been misdirected.  Flexible Funding's letter further directed Iron Mountain to make payments to P.O. Box 1300, Suisun City, CA 94585-4300.

8. By electronic mail dated December 1, 2004, from L&L's President, Yerdon, L&L informed Iron Mountain that its accounts financing agreement with Flexible Funding had been

terminated and that all payments should be made to L&L's office on Tremont Street in Boston. A true and accurate copy of the December 1, 2004, email from Yerdon to Iron Mountain is attached hereto as **Exhibit A**.

9.  As of and after January 12, 2005, L&L's invoices to Iron Mountain stated that payments were to be remitted to L&L's Tremont Street office in Boston.

10. Flexible Funding has alleged that Iron Mountain misdirected certain payments by sending them directly to L&L.

11. On or about February 18, 2005, Flexible Funding, again through its Boston counsel, sent a letter to Iron Mountain's General Counsel claiming that certain payments allegedly due from Iron Mountain had not been received by Flexible Funding and advised Iron Mountain that Flexible Funding was the assignee of L&L's present and future accounts (though one year earlier it stated that Flexible Funding was merely a lien holder).  This letter also directed that any payments on L&L invoices should be sent to Flexible Funding in California.

12. On March 9, 2005, Shelly Baldwin, Collector II at Euler Hermes ACI, located in Owings Mills, Maryland, which claims to be a credit insurer representing Flexible Funding, wrote to Iron Mountain regarding 27 invoices that Flexible Funding asserted were owed and unpaid by Iron Mountain.

13. On March 15, 2005, in an effort to correct Euler Hermes' misunderstanding, Iron Mountain responded to Ms. Baldwin and explained that of the 27 invoices identified in Ms. Baldwin's letter, Iron Mountain's records reflect only 11 such invoices issued by L&L.  Iron Mountain further explained that it had paid all 11 invoices in full (and provided a chart outlining when and in what manner each invoice had been paid).

14. On March 17, 2005, Iron Mountain wrote to Flexible Funding's Boston counsel explaining that, based on Iron Mountain's own internal investigation, it did not believe that Flexible Funding's statement that certain payments due from Iron Mountain to L&L had been misdirected was accurate. In that March 17, 2005 letter, Iron Mountain requested that Flexible Funding provide the information and documentary support of its assertion of misdirected payments. Pursuant to Section 9-405(c) of the Massachusetts Uniform Commercial Code, Mass. Gen. Laws c. 106, § 9-405(c), Iron Mountain also requested proof of Flexible Funding's entitlement to payment of any L&L invoice to Iron Mountain. Flexible Funding did not provide and has not provided any such proof to Iron Mountain, as required by the statute.

15. On March 17 and 18, 2005, Ms. Baldwin of Euler Hermes ACI responded to Iron Mountain's letter of March 15, 2005 referred herein. Ms. Baldwin asserted, incorrectly, that there were many L&L invoices that had either been unpaid or "short-paid" or that payments had been misdirected. In connection with her letters of March 17 and 18, 2005, Ms. Baldwin enclosed copies of invoices that had allegedly been sent to Iron Mountain for services that L&L had allegedly provided to Flexible Funding. Ms. Baldwin also enclosed what she alleged were computer screen prints from Iron Mountain's accounts payable system showing amounts which Iron Mountain allegedly owed to L&L (and thus allegedly owed to Flexible Funding).

16. On March 30, 2005, Iron Mountain sent a further letter to Ms. Baldwin of Euler Hermes ACI responding comprehensively to all of the issues that Ms. Baldwin had raised to date. As for the "short-paid" invoices, Iron Mountain explained, among other things, that in each and every instance where Flexible Funding's records indicate that Iron Mountain "short paid" an invoice, the amount that L&L allegedly reported to Flexible Funding as being invoiced to Iron Mountain differed, in many cases very significantly, from the amount of the actual invoice which

5

L&L sent to Iron Mountain. Iron Mountain further explained that where Flexible Funding's records allegedly indicate that Iron Mountain failed to pay L&L invoices, Iron Mountain did not receive any of those invoices from L&L and, in any event, L&L did not perform any of the services purportedly reflected on those unpaid invoices such that Iron Mountain would not have paid them if they had been received. Finally, with respect to the alleged computer screen prints that Ms. Baldwin included in her previous letter, Iron Mountain pointed out that they "appear to be hand-modified screen prints" (*i.e.*, forged) and explained the factual basis for this conclusion.

17. Upon information and belief, L&L submitted inaccurate documentation, including documents purporting to be invoices from L&L to Iron Mountain that were not actually sent to Iron Mountain, to Flexible Funding with inflated invoices in an effort to borrow more money than it was entitled to borrow from the accounts financing agreement between L&L and Flexible Funding.

18. On June 3, 2005, Iron Mountain received a Notice of Levy, identifying number 02-0581393, from the Internal Revenue Service ("IRS"). The Notice of Levy states that it "IS NOT A BILL FOR TAXES YOU [*i.e.*, IRON MOUNTAIN] OWE, THIS IS A NOTICE OF LEVY WE ARE USING TO COLLECT MONEY OWED BY THE TAXPAYER NAMED ABOVE." The Notice of Levy identifies L&L as the Taxpayer.

**Count I: Misrepresentation**

19. Iron Mountain incorporates by reference herein the allegations in paragraphs 1 through and including 18 as if set forth in full herein.

20. By electronic mail dated December 1, 2004, from Yerdon, L&L's President, L&L and Yerdon represented to Iron Mountain that the accounts financing agreement between L&L

6

and Flexible Funding had been terminated and that Iron Mountain should make all payments to L&L directly.

21.     The Third-Party Defendants intended for Iron Mountain to rely, and Iron Mountain did rely, upon the Third-Party Defendants' representations regarding the termination of the accounts financing agreement between L&L and Flexible Funding.

22.     Upon information and belief, based upon the averments made by Flexible Funding, the Third-Party Defendants' representations regarding the termination of the accounts financing agreement between L&L and Flexible Funding were false.

23.     As a result of the Third-Party Defendants' misrepresentations and Iron Mountain's reasonable and justifiable reliance thereon, Iron Mountain has suffered or is at risk of suffering damages in an amount to be ascertained at trial.

### Count II:  Common Law Indemnification

24.     Iron Mountain incorporates by reference herein the allegations in paragraphs 1 through and including 23 as if set forth herein.

25.     Iron Mountain has paid L&L certain monies that, based upon the averments made by Flexible Funding, L&L was allegedly bound to pay to Flexible Funding.

26.     Upon information and belief, based upon the averments made by Flexible Funding, L&L has allegedly not paid Flexible Funding after receiving certain payments from Iron Mountain.

27.     Upon information and belief, the Third-Party Defendants have misappropriated certain monies that Iron Mountain paid to L&L.

28.     Iron Mountain was without knowledge of and did not participate in the Third-Party Defendants' allegedly wrongful conduct.

29. Flexible Funding is asserting claims against Iron Mountain to recover certain payments that Iron Mountain made directly to L&L.

30. In the event that Iron Mountain is found liable to Flexible Funding for any diverted payments, as a matter of law Iron Mountain is entitled to be indemnified by the Third-Party Defendants.

### Count III: Mass. Gen. Laws. Ch. 93A

31. Iron Mountain incorporates by reference herein the allegations in paragraphs 1 through and including 30 as if set forth in full herein.

32. If the allegations by Flexible Funding are true, then the Third-Party Defendants conduct, as set forth above, constitutes unfair and deceptive acts and practices in the conduct of trade or commerce in violation of Mass. Gen. Laws c. 93A, § 2, actionable under § 11.

33. Upon information and belief, among other unfair and deceptive acts and practices, the Third-Party Defendants provided false and fraudulent invoices to Flexible Funding and forged Iron Mountain print screens in an effort to show to its factoring agent that Iron Mountain owed more to L&L than was actually due.

34. If the allegations by Flexible Funding are true, then the Third-Party Defendants' apparently falsely informed Iron Mountain that its accounts financing agreement with Flexible Funding had been terminated and that all payments should be made to L&L's office on Tremont Street in Boston.

35. The unfair and deceptive acts by the Third-Party Defendants occurred primarily and substantially in Massachusetts.

36.    As a direct and proximate result of such unfair and deceptive acts and practices by the Third-Party Defendants, Iron Mountain is exposed to the risk of a loss of its money or property in an amount to be determined at trial.

37.    If the allegations by Flexible Funding are true, then the Third-Party Defendants' conduct constitutes a knowing and willful violation of Mass. Gen. Laws c. 93A, §§ 2 and 11, and, as a result, Iron Mountain is entitled to treble damages and reasonable attorneys' fees.

WHEREFORE, Iron Mountain respectfully requests that this Court:

A.    Enter a final and binding judgment that, if and to the extent Iron Mountain is adjudged to be liable to Flexible Funding for any amount, Iron Mountain is entitled to be indemnified by and recover from L&L and Yerdon, jointly and severally, the full amount of any such liability;

B.    Award Iron Mountain compensatory damages against the Third-Party Defendants, jointly and severally, in such amount as may be determined at trial;

C.    Award Iron Mountain at least double and up to three times its actual damages, if any, together with interest, costs and attorneys' fees pursuant to Mass. Gen. Laws c. 93A § 11;

D. Award Iron Mountain its costs and expenses of action, including reasonable attorneys' fees and disbursements; and

E. Award Iron Mountain such further relief as the Court deems just.

**IRON MOUNTAIN INFORMATION MANAGEMENT, INC.**

By its attorneys,

December 9, 2005
/s/ Samual A. Miller_____
Larry L. Varn (BBO #508130)
*lvarn@sandw.com*
Samual A. Miller (BBO #648568)
*smiller@sandw.com*
SULLIVAN & WORCESTER LLP
One Post Office Square
Boston, Massachusetts 02109
(617) 338-2800