## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| IRON MOUNTAIN INFORMATION MANAGEMENT, INC., | ) ) ) ) |  |
| Plaintiff, | ) ) | CIVIL ACTION NO. 05-10979-DPW |
| v. | ) ) |  |
| L&L TEMPORARIES, INC., ET AL., | ) ) |  |
| Defendants. | ) ) |  |
| FLEXIBLE FUNDING, LLC, | ) ) ) |  |
| Plaintiff, | ) ) |  |
| v. | ) ) | CIVIL ACTION No. 05-12071-DPW |
| IRON MOUNTAIN INFORMATION MANAGEMENT, INC., | ) ) ) ) |  |
| Defendant and Third-Party Plaintiff, | ) ) ) |  |
| v. | ) ) |  |
| L&L TEMPORARIES, INC. and SUSAN YERDON, | ) ) ) ) |  |
| Third-Party Defendants. | ) ) |  |

**MEMORANDUM OF LAW
IN SUPPORT OF PLAINTIFF'S
<u>APPLICATION FOR JUDGMENT BY DEFAULT</u>**

Pursuant to Fed. R. Civ. P. 55(b)(2), Interpleader Plaintiff, Defendant, and Third-Party

Plaintiff Iron Mountain Information Management, Inc. ("<u>Iron</u> <u>Mountain</u>"), is applying to this

Court for a judgment by default against Defendant and Third-Party Defendant L&L

{B0513043; 1}

Temporaries, Inc. ("L&L") and Third-Party Defendant Susan Yerdon ("Yerdon" and, together with L&L, the "Third-Party Defendants"). The Court entered a default against the Third-Party Defendants on April 5, 2006.

## BACKGROUND[1]

### Iron Mountain Contracts with L&L

By written agreements dated April 20, 2004 (the "Contracts"), Iron Mountain, the world's leader for outsourced records and information management services, entered into an agreement with L&L by which L&L would provide temporary labor to Iron Mountain in the Greater Boston area. First Am. Cmplt., ¶ 8; Third-Pty Cmplt., ¶ 5. The Contracts further provide that L&L is responsible for payment of all employment, withholding and other tax obligations resulting from the services provided by L&L to Iron Mountain under the Contracts. First Am. Cmplt., ¶ 8; Third-Pty Cmplt., ¶ 5. Pursuant to the Contracts, L&L and Iron Mountain initially agreed that Iron Mountain's payments would be directed to:

> L&L Temporaries, Inc.
> P.O. Box 1300
> Suisun City, CA  94585-4300
> syerdon@lnlassociates.com
> (617) 423-4955

First Am. Cmplt., ¶ 10; Third-Pty Cmplt., ¶ 6.

### Flexible Funding Notifies Iron Mountain to Fund Payments to Flexible Funding

On or about February 18, 2004, which was more than two (2) months before Iron Mountain and L&L entered into the Contracts, Flexible Funding LLC ("Flexible Funding"),

---

[1] On June 9, 2005, Iron Mountain filed the First Amendment Complaint for Interpleader, Declaratory Judgment, and Injunctive and Compensatory Relief ("First Amended Complaint" or "First Am. Complt.") and on December 9, 2005, Iron Mountain filed the Third-Party Complaint Against Susan Yerdon and L&L Temporaries, Inc. ("Third Party Complaint" or "Third Pty. Complt."). This Background section is based on the well-pleaded facts contained therein.

through its Boston counsel, sent a letter to an Iron Mountain records center located at 32 George Street, Boston, Massachusetts, advising Iron Mountain that Flexible Funding had financed loans to L&L and that all of those loans were secured by a first priority lien in the accounts receivable of L&L. First Am. Cmplt., ¶ 14; Third-Pty Cmplt., ¶ 7. In its February 18, 2004, letter, Flexible Funding also claimed it discovered in a review of its records that certain payments allegedly due from Iron Mountain had been misdirected. First Am. Cmplt., ¶ 14; Third-Pty Cmplt., ¶ 7. Flexible Funding's letter further directed Iron Mountain to make payments to P.O. Box 1300, Suisun City, CA 94585-4300 (*i.e.*, the same address provided for payments in the Contracts). First Am. Cmplt., ¶ 14; Third-Pty Cmplt., ¶ 7.

### L&L and Yerdon Falsely Notify Iron Mountain to Send Payments to L&L

By electronic mail dated December 1, 2004, from L&L's President, Yerdon, L&L informed Iron Mountain that its accounts financing agreement with Flexible Funding had been terminated and directed that all payments should be made to L&L's office at 101 Tremont Street, Boston, Massachusetts. First Am. Cmplt., ¶ 22; Third-Pty Cmplt., ¶ 8. As of and after January 12, 2005, L&L's invoices to Iron Mountain stated that payments were to be remitted to L&L's Tremont Street office in Boston. First Am. Cmplt., ¶ 23; Third-Pty Cmplt., ¶ 9. As instructed, Iron Mountain delivered certain payments to L&L at its 101 Tremont Street, Boston, Massachusetts address instead of sending the payments to Flexible Funding in California. Third-Pty Cmplt., ¶ 25. It was Yerdon's false statement to Iron Mountain concerning L&L's relationship – or, more precisely, alleged termination of L&L's relationship – with Flexible Funding that gave rise to Flexible Funding's claims against Iron Mountain.

### L&L and the Fraudulent Invoices and Forged Screen Print

On March 9, 2005, Shelly Baldwin, Collector II at Euler Hermes ACI, located in Owings Mills, Maryland, which claimed to be a credit insurer representing Flexible Funding, wrote to

-3-

Iron Mountain regarding 27 invoices that Flexible Funding asserted were owed and unpaid by Iron Mountain. First Am. Cmplt., ¶ 16; Third-Pty Cmplt., ¶ 12. On March 15, 2005, in an effort to correct Euler Hermes' misunderstanding, Iron Mountain responded to Ms. Baldwin and explained that of the 27 invoices identified in Ms. Baldwin's letter, Iron Mountain's records reflect only 11 such invoices issued by L&L. First Am. Cmplt., ¶ 17; Third-Pty Cmplt., ¶ 13. Iron Mountain further explained that it had paid all 11 invoices in full (and provided a chart outlining when and in what manner each invoice had been paid). First Am. Cmplt., ¶ 17; Third-Pty Cmplt., ¶ 13.

On March 17 and 18, 2005, Ms. Baldwin responded to Iron Mountain's March 15, 2005 letter. First Am. Cmplt., ¶ 19; Third-Pty Cmplt., ¶ 15. Ms. Baldwin asserted, incorrectly, that there were many L&L invoices that had either been unpaid or "short-paid" or that payments had been misdirected. First Am. Cmplt., ¶ 19; Third-Pty Cmplt., ¶ 15. In connection with her letters of March 17 and 18, 2005, Ms. Baldwin enclosed copies of invoices that had allegedly been sent to Iron Mountain for services that L&L had allegedly provided to Flexible Funding. First Am. Cmplt., ¶ 19; Third-Pty Cmplt., ¶ 15. Ms. Baldwin also enclosed what she alleged were computer screen prints from Iron Mountain's accounts payable system showing amounts which Iron Mountain allegedly owed to L&L (and thus allegedly owed to Flexible Funding). First Am. Cmplt., ¶ 19; Third-Pty Cmplt., ¶ 15.

On March 30, 2005, Iron Mountain sent a letter to Ms. Baldwin responding comprehensively to all of the issues that Ms. Baldwin had raised to date. First Am. Cmplt., ¶ 20; Third-Pty Cmplt., ¶ 16. As for the "short-paid" invoices, Iron Mountain explained, among other things, that in each and every instance where Flexible Funding's records indicate that Iron Mountain "short paid" an invoice, the amount that L&L allegedly reported to Flexible Funding

as being invoiced to Iron Mountain differed, in many cases very significantly, from the amount of the actual invoice that L&L sent to Iron Mountain.  First Am. Cmplt., ¶ 20; Third-Pty Cmplt., ¶ 16.  Iron Mountain further explained that where Flexible Funding's records allegedly indicate that Iron Mountain failed to pay L&L invoices, Iron Mountain did not receive any of those invoices from L&L and, in any event, L&L did not perform any of the services purportedly reflected on those unpaid invoices such that Iron Mountain would not have paid them if they had been received.  First Am. Cmplt., ¶ 20; Third-Pty Cmplt., ¶ 16.  Finally, with respect to the alleged computer screen prints that Ms. Baldwin included in her previous letter, Iron Mountain pointed out that they "appear to be hand-modified screen prints" (*i.e.*, forged) and explained the factual basis for this conclusion.  First Am. Cmplt., ¶ 20; Third-Pty Cmplt., ¶ 16.  Iron Mountain submits that L&L submitted inaccurate documentation, including documents purporting to be invoices from L&L to Iron Mountain that were not actually sent to Iron Mountain, to Flexible Funding with inflated invoices in an effort to borrow more money than it was entitled to borrow from the accounts financing agreement between L&L and Flexible Funding.  First Am. Cmplt., ¶ 21; Third-Pty Cmplt., ¶ 17.

## **Procedural History[2]**

On or about April 13, 2005, Flexible Funding filed suit against Iron Mountain in the Superior Court of the State of California, County of San Francisco, Civil Action No.:  CGC 05440374 (the "California State Action") alleging that Iron Mountain misdirected certain payments to L&L.  Miller Aff., ¶ 8.  On or about May 20, 2005, the California State Action was removed to the United States District Court for the Northern District of California, San Francisco

---

[2] The procedural history of this action as well as the attorneys fees incurred as a result of the Third-Party Defendants' wrongful conduct are addressed in the Affidavit of Samuel A. Miller ("Miller Aff.").

Division, as Civil Action No. C 05-02082 JSW (the "California Federal Action").  Miller Aff., ¶ 9.  In this action, arguing solely due to the alleged misdirected payments to L&L, Flexible Funding sought nearly $700,000 in damages.  On May 11, 2005, Iron Mountain filed a Complaint for Interpleader, Declaratory Judgment and Injunctive and Compensatory Relief against L&L and Flexible Funding in this Court as Civil Action No. 05-10979 DPW (the "Interpleader Action").  Miller Aff., ¶ 10.  On June 9, 2005, Iron Mountain filed the First Amended Complaint for Interpleader, Declaratory Judgment and Injunctive or Compensatory Relief against L&L, Flexible Funding, and the United States of America through the Internal Revenue Service, in the Interpleader Action (the "First Amended Complaint").  Miller Aff., ¶ 12.  On November 30, 2005 the California Federal Action was transferred to the United States District Court for the District of Massachusetts as Civil Action No. 05-12071 pursuant to 28 U.S.C. § 1404, and consolidated with the Interpleader Action (the "Consolidated Action").

On March 3, 2006 this Court entered a stipulation of dismissal as to all claims by and against Iron Mountain, Flexible Funding and the IRS in the Consolidated Action.  Miller Aff., ¶ 20.  This stipulation was agreed to as contemplated by a settlement among and between Iron Mountain and Flexible Funding whereby Iron Mountain paid Flexible Funding $85,000 in settlement of Flexible Funding's claims, including its claims for misdirected payments.  Miller Aff., ¶ 20.  On December 9, 2005 Iron Mountain filed a third-party complaint against L&L and Yerdon in Civil Action No. 05-12071-DPW (the "Third-Party Complaint").  Miller Aff., ¶ 14.  On April 5, 2006, this Court entered a default against L&L and Yerdon.  Having settled its action with Flexible Funding, Iron Mountain is entitled to recovery against the Third-Party Defendants.  Miller Aff., ¶ 24.

**Legal Fees Incurred by Iron Mountain**

The above-captioned actions quickly became complex, multi-party affairs, including a collateral action in California. In pursuing L&L and defending against Flexible Funding (which sued Iron Mountain solely because of L&L and Yerdon's misconduct), Iron Mountain has incurred significant legal fees. Miller Aff., ¶ 5-7. These incurred fees total $86,032.50. Miller Aff., ¶ 5.

**ARGUMENT**

Pursuant to Fed. R. Civ. P. 55(b)(2), Iron Mountain is entitled to a judgment on default against the Third-Party Defendants.

When assessing Iron Mountain's damages after the Third-Party Defendants' default, Iron Mountain's allegations against the Third-Party Defendants are to be accepted as true and established as a matter of law. See Libertad v. Sanchez, 215 F.3d 206, 208 (1st Cir. 2000) ("[w]ith respect to damages, the default judgment requires that plaintiffs' allegations of fact against Sanchez 'be taken as true and . . . be considered established as a matter of law'") quoting Brockton Sav. Bank v. Peat, Marwick, Mitchell & Co., 771 F.2d 5, 13 (1st Cir. 1985)); see generally 10A C. Wright, A. Miller and M. Kane, Fed. Prac. & Proc. Cir. 3d § 2688 ("[i]f the court determines that defendant is in default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.").

A hearing and/or an accounting of damages is not necessarily required even when damages are for an amount that is not easily calculable. See, e.g., DIRECTV, Inc. v. Hamilton, 215 F.R.D. 460 (S.D.N.Y. 2003) (holding that after the entry of a default judgment, a district court determining damages not susceptible to simple mathematical calculation has the discretion to rely on detailed affidavits or documentary evidence in lieu of an evidentiary hearing), U.S. v. Gant, 268 F. Supp. 2d 29 (D.D.C. 2003) (holding that a court is not required to conduct hearing

to fix amount of damages on default, as long as it ensures that there is basis for damages specified in default judgment). Accordingly, for the above-stated reasons, Iron Mountain asks this Court to grant its Application for Judgment by Default, based on the information contained in this memorandum of law and the Miller Aff., both of which are filed contemporaneously herewith.

### A. Iron Mountain Has Established Claims for Misrepresentation, Common Law Indemnification and Under Mass. Gen. Laws Ch. 93A.

The First Amended Complaint and Third-Party Complaint sufficiently state facts allowing for recovery against the Third-Party Defendants. Iron Mountain also properly requested damages in its prayers for relief. For example, in the Third-Party Complaint, Iron Mountain requested the following relief:

> A. Enter a final and binding judgment that, if and to the extent Iron Mountain is adjudged to be liable to Flexible Funding for any amount, Iron Mountain is entitled to be indemnified by and recover from L&L and Yerdon, jointly and severally, the amount of any such liability;
>
> B. Award Iron Mountain compensatory damages against the Third-Party Defendants, jointly and severally, in such amount as may be determined at trial;
>
> C. Award Iron Mountain at least double and up to three times its actual damages, if any, together with interest, costs and attorneys' fees pursuant to Mass. Gen. Laws c. 93A § 11;
>
> D. Award Iron Mountain its costs and expenses of action, including reasonable attorneys' fees and disbursements; and
>
> E. Award Iron Mountain such further relief as the Court deems just.

Accordingly, the Court should award Iron Mountain a default judgment and award damages based on the damages as calculated from the Miller Aff.

### 1. Iron Mountain Established a Cause of Action for Misrepresentation.

The Court should grant Iron Mountain a default judgment and award damages based on the Third-Party Defendants' misrepresentations.  Under Massachusetts law, Iron Mountain may recover for misrepresentation upon proof that  (i) the Third-Party Defendants made a misrepresentation of fact; (ii) with the intention to induce another to act upon it; (iii) with knowledge of its untruth; (iv) intended to be acted upon (as it was); and (v) that damage resulted therefrom.  See Zimmerman v. Kent, 31 Mass. App. Ct. 72, 77-78, 575 N.E.2d 70, 74 (1991); McEneaney v. Chestnut Hill Realty Corp., 38 Mass. App. Ct. 573, 575, 650 N.E.2d 93, 96 (1995); see generally 17A Mass. Prac. Series, Prima Facie Case § 29.1.  The First Amended Complaint and the Third-Party Complaint contain sufficient facts (which are taken as true for purposes of a default judgment) to establish these elements.  For example, by electronic mail dated December 1, 2004, from Yerdon, L&L's President, L&L and Yerdon falsely represented to Iron Mountain that the account financing agreement between L&L and Flexible Funding had been terminated and that Iron Mountain should make all payments to L&L directly.  The Third-Party Defendants intended for Iron Mountain to rely, and Iron Mountain did rely, upon the Third-Party Defendants' false representations regarding the termination of the account financing agreement between L&L and Flexible Funding.  As Iron Mountain was later informed in the Consolidated Action, the representations regarding the termination of the accounts financing agreement between L&L and Flexible Funding were false.  As a result of the Third-Party Defendants' misrepresentations and Iron Mountain's reasonable and justifiable reliance thereon, Iron Mountain suffered significant damages.  These damages include the amounts incurred as a result of having to defend against the claims from Flexible Funding and amounts paid to Flexible Funding in settlement of its claims, which settlement totaled, $85,000.

      2.      **Iron Mountain Has Established a Cause of Action for Common Law Indemnification.**

The Court should grant Iron Mountain a default judgment and award damages based on the Third-Party Defendants' obligation to indemnify Iron Mountain. Under Massachusetts law, at common law, "a person may seek indemnification if that person 'does not join in the negligent act but is exposed to derivative or vicarious liability for the wrongful act of another.'" Fireside Motors, Inc. v. Nissan Motor Corp., 395 Mass. 366, 369-370, 479 N.E.2d 1386, 1388-1389 (1985) (citations omitted). This cause of action exists independently of statute, and whether or not contractual relations exist between the parties. Id. (citing W. Prosser & W. Keeton, Torts § 51 at 341 (5th ed. 1984)). has incurred damages as a result of the Third-Party Defendants' wrongful conduct. In this action, Iron Mountain paid L&L certain monies that, based upon averments made by Flexible Funding in the Consolidated Action, L&L was bound to pay to Flexible Funding. Instead of making those payments, L&L misappropriated those funds. Iron Mountain was without knowledge of and did not participate in the Third-Party Defendants' conduct; nevertheless, Iron Mountain incurred damages by having to defend against and subsequently settle with Flexible Funding.

### 3. Iron Mountain Has Established a Cause of Action for Damages Under Mass. Gen. Laws c. 93A.

The Court should grant Iron Mountain a default judgment and award damages based on the Third-Party Defendants' unfair and deceptive acts and practices. Section 2 of Chapter 93A of the Massachusetts General Laws prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Mass. Gen. Laws ch. 93A, § 2. Upon a finding that a defendant has violated section 2, the court can award a plaintiff compensatory damages and "recovery shall be in the amount of actual damages; or up to three, but not less than two, times such amount if the court finds that the [conduct] … was a willful or knowing violation of said section two." Mass. Gen. Laws ch. 93A, § 11. A "deceptive" act or

practice for the purposes of Mass. Gen. Laws. ch. 93A is simply one that has the capacity to deceive; a negligent or careless misrepresentation of fact, the truth of which was reasonably knowable by the person or entity who made it, may be a deceptive act or practice. See Int'l Fidelity Ins. Co. v. Wilson, 387 Mass. 841, 848-49, 443 N.E.2d 1308, 1312-13 (1983); PMP Assocs., Inc. v. Globe Newspaper Co., 366 Mass. 593, 596, 321 N.E.2d 915, 916-17 (1975).  The Third-Party Defendants' conduct constitutes unfair and deceptive acts and practices in violation of Mass. Gen. Laws ch. 93A, § 2 and is actionable under § 11.  The Third-Party Defendants fraudulently gave Flexible Funding inaccurate copies of invoices and did not perform certain services purportedly reflected on certain of those invoices.  The Third-Party Defendants also falsely and fraudulently notified Iron Mountain that Iron Mountain's payments should be sent directly to L&L instead of Flexible Funding, L&L's factoring agent.  Additionally, the Third-Party Defendants fraudulently gave Flexible Funding a hand-modified (*i.e.*, forged) screen print that the Third-Party Defendants falsely claimed originated from Iron Mountain's accounting system.  These unfair and deceptive acts and practices were knowingly committed in an effort to show to L&L's factoring agent (*i.e.*, Flexible Funding) that Iron Mountain owed more to L&L than was actually due.  Moreover, all of these actions occurred in or from L&L's offices in Massachusetts.  As a result of these unfair and deceptive acts, Iron Mountain was required to incur costs to defend against claims from Flexible Funding as well as damages it was required to incur as a result of its settlement with Flexible Funding.

Moreover, since the unfair and deceptive acts and practices were knowingly and willfully committed, Iron Mountain should be awarded triple damages. Massachusetts courts award multiple damages after default judgments are granted on 93A claims.  See, e.g., Marshall v. Stratus Pharms., Inc., 51 Mass. App. Ct. 667, 680, 749 N.E.2d 698, 710 (2001) ("[t]he individual

-12-

defendants, as well as Stratus, are liable on the c. 93A counts both as to the plaintiff's claim and Brody's assigned claim.  Attorney's fees, damages, and whether such damages are to be multiplied are to be determined by the Superior Court judge").  Accordingly, the damages incurred by Iron Mountain should be tripled.

Case 1:05-cv-10979-DPW     Document 35     Filed 05/05/2006     Page 12 of 14

-13-

4. **<u>Iron Mountain's Damages</u>.**

As a result of the Third-Party Defendants' conduct, and as articulated in the affidavits filed herewith, Iron Mountain is entitled to recover a default judgment and damages as follows:

- Direct Damages - Settlement paid to Flexible Funding $85,000.

- Attorneys' fees incurred $86,032.50.

- Total Damages after Direct Damages are tripled $341,032.50.

                                     **IRON MOUNTAIN INFORMATION MANAGEMENT, INC.**

                                     By its attorneys,

May 5, 2006                         /s/ Samual A. Miller  
                                        Larry L. Varn (BBO #508130)  
                                        *lvarn@sandw.com*  
                                        Samual A. Miller (BBO #648568)  
                                        *smiller@sandw.com*  
                                        SULLIVAN & WORCESTER LLP  
                                        One Post Office Square  
                                        Boston, Massachusetts  02109  
                                        (617) 338-2800

{B0513043; 1}

## Certificate of Service

I hereby certify that a true copy of this **Memorandum of Law in Support of Plaintiff's Application for Judgment by Default** was served upon the following persons by the method indicated on May 5, 2006.

Kenneth R. Reisman, Esq.
997 Chestnut Street
Newton Upper Falls, Massachusetts 02464

*Attorney for L&L Temporaries and Susan Yerdon*
(by FedEx)

Susan Yerdon
1 Riverview Boulevard, #4-203
Methuen, Massachusetts 01844
(by FedEx)

L&L Temporaries
101 Tremont Street
Boston, Massachusetts 02108
(by Hand)


/s/ Samual A. Miller_____

{B0513043; 1}